UNITED STATES, Appellee

v.

JOSEPH A. PERRUCCIO, Private E–2, U. S. Army, Appellant

4 USCMA 28, 15 CMR 28

No. 3569

Decided March 19, 1954

LT COL Herman P. Goebel, Jr., U. S. Army, and 1ST LT David J. Conroy, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Roderick V. Brown. U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by general court-martial in Korea for negligent homicide in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was found guilty as charged and sentenced to be discharged from the service with a bad-conduct discharge, to forfeit all pay and allowances, and to be confined at hard labor for one year. The convening authority approved the findings and sentence, but suspended its execution for six months at which time, in the absence of a vacation of the suspension, the entire sentence was to be remitted. The board of review affirmed.

On March 16, 1953, and for approximately six weeks prior thereto, the accused and the deceased, Owens, were two of five men manning a half-track prime mover which mounted antiaircraft weapons. During this time, all five men slept in a bunker located approximately eight to ten yards from its position which was on a hill 200 or 300 yards from the battery headquarters. The main line of resistance was over a mile away and friendly infantry troops were between the battery position and the enemy. Every night each of the five members of the unit was required to stand guard at the position for two hours. As each guard went off duty he would come to the bunker and awaken his relief. It was customary for the guard to enter the bunker two or three times during his tour of duty to check the fire in a small stove. This stove furnished the only illumination in the bunker, and the light was so dim that it was difficult to recognize anyone who entered. Although the guards customarily carried flashlights, they did not always use them when entering the bunker at night. Small arms fire had never been received in the vicinity of the bunker, but about two weeks prior to this fatal incident, the unit had been alerted against infiltration and guerilla attacks and the alert was still in effect.

On March 16, 1953, the accused was on guard duty from 10:00 pm until 12:00 midnight. When he completed his tour of duty, he entered the bunker and awakened Owens, his relief, who took over the assignment and the accused retired. Approximately fifty minutes later Owens entered the bunker to check the fire. Neither he nor the accused spoke, but the accused seized his carbine, and fired several times. Owens was killed immediately by the shots.

The accused and the deceased were good friends and there was no friction existing between them. The accused's character and reputation were excellent. After the shooting, he expressed his remorse and regret and stated that he had shot because he had mistaken the person entering the bunker for an infiltrator.

The foregoing facts and circumstances are without substantial dispute and our order granting accused's petition was to answer his contention that the law officer was required sua sponte to instruct the court-martial members on mistake of fact.

Accused's argument is based upon the premise that the homicide was justifiable because he believed the victim was

**29**

an enemy. In support of his contention that justification for the commission of an offense may be based upon a mistake of fact, reliance is placed on the language of the Manual and the language of the United States Circuit Court of Appeals for the District of Columbia in Townsend v. United States, 95 F2d 352, is cited. There the court stated:

". . . Justification may also be based upon a mistake of fact by the defendant, where his mistake is a reasonable one and where the fact—if it were as he believed it to be—would have constituted justification. A familiar example is that of the defendant who kills in self-defense because he *reasonably believes* that he is in danger of death and that the only way to save his life is by killing his assailant."

Accused further relies on a statement by this Court that justification based upon a reasonable mistake of fact could raise an issue of defense. United States v. Furney, 2 USCMA 270, 8 CMR 70, involved a conviction for the offense of unpremeditated murder. There the accused, in pretrial statements, said that at the time of the killing he believed he was firing at enemy soldiers. We said:

"The only indication of mistake of fact contained in this record lies in the statements of the accused. The substance of his story was that he thought the unknown person or persons fired at to be enemy soldiers. If the facts were equivocal in this respect, and if the accused's story were consistent and straightforward, we would be inclined to the view that this would be sufficient to raise the defense theory as a reasonable issue. However, there are many facts in the record which clearly controvert this theory and the accused's stories were not consistent nor reasonably believable."

In the instant case the accused's story is not inconsistent with the evidence of the other witnesses, and it is reasonably believable. However, its credibility is only part of the test. In addition, the facts and circumstances believed to be true must be sufficient to constitute a predicate for justification (United States v. Ginn, 1 USCMA 453, 4 CMR 45) ; and according to the Manual, the mistake of fact must be an honest mistake and not the result of carelessness or fault on the part of the accused. (Paragraph 154a, Manual for Courts-Martial, United States, 1951). There is considerable doubt that in all instances the Manual statement is consistent with the provisions of the Code but for reasons which will be developed later, we need not consider that question in this case. Here, if in fact the deceased was an infiltrator, there would be justification for the homicide since it is beyond dispute that the killing of an enemy in time of war is lawful. However, one of the principal grounds of negligence upon which the Government relies is that the accused did not use reasonable means to determine the identity of the person before he fired. Under the circumstances of this case there was some duty imposed on him to determine whether he was shooting at a friend or foe. If his mistake of fact is based on the same negligence as is the substantive offense, then the case resolves itself into the narrow issue of whether the killing was the result of negligence on the part of the accused. We have previously held that there is no duty on the part of the law officer to introduce into the case a theory which, of necessity, is covered adequately by other instructions.

The instruction of the law officer outlined the law of the case in the following manner:

"The specification charges the accused with negligent homicide, in violation of Article 134; negligent homicide is defined as unlawfully causing the death of another by simply [sic] negligence.

"The court is advised that to find the accused guilty of the Specification and the Charge, it must be satisfied by legal and competent evidence beyond a reasonable doubt:

"(1) That the victim, Bernard A. Owens, is dead;

"(2) That his death was unlawfully caused at APO 86 on or about 16

30

March 1953 by a negligent act of the accused, to wit: shooting him in the chest with a caliber 30 carbine; and

"(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces.

"The court is further advised in this connection that negligent homicide is defined as unlawfully causing the death of another by simple negligence, that is, by an act of a person who is under a duty to use care, which, although not negligent to such a degree as to justify a charge of involuntary manslaughter, nevertheless exhibits a lack of that degree of care for the safety of others which a reasonably prudent man would have exercised under the circumstances."

The above instruction covers the only issue with which we are here concerned. If the evidence is sufficient to permit the court-martial to find beyond a reasonable doubt that the accused failed to use the care that a reasonably prudent man would have used under the circumstances, then there is factual support for the finding. If, on the other hand, there is no substantial evidence in the record which would justify that conclusion, then a finding of not guilty should have been returned. That is precisely the test which determines a mistake of fact in a negligent homicide case. In this case, if the court-martial found that accused's mistake was induced by his own negligence, it had to find that the death of the victim was caused by the same negligence. Conversely, if it had to find that the accused acted reasonably in shooting the guard, it was compelled to find his mistake could not have been founded on a lack of due care. Therefore, a determination of one issue necessarily determined the other.

One further point bears mentioning. Prior to charging the court, the law officer submitted his proposed instructions to counsel and asked if they had any requests for additions or modifications. Defense counsel replied in the negative. While we have, under many circumstances, refused to invoke the doctrine or waiver, we have used it when instructions are assailed because of lack of clarity. We again repeat that if the law officer defines the offense properly and defense counsel believes the theory of the case is not presented with sufficient clarity in any particular, he should make a request. No request was submitted in the instant case.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.