UNITED STATES, Appellant

v

WILLIE S. HOLDER, Private, U. S. Marine Corps, Appellee

7 USCMA 213, 22 CMR 3

No. 7485

Decided August 3, 1956

*Major Verne L. Oliver* argued the cause for Appellant, United States.

*Captain R. D. Humphreys* argued the cause for Appellee, Accused.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Despite his plea of not guilty, the accused was convicted by a general court-martial[1] of desertion, in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679, and sentenced to dishonorable discharge, total forfeitures, and confinement for three years. The convening authority approved, but the board of review, one member dissenting, held that the law officer erred in failing to give defense counsel's requested instruction on mistake of fact as a defense to the charge of desertion. The board, therefore, affirmed only a short unauthorized absence and a sentence to a bad-conduct discharge, total forfeitures, and six months' confinement. The dissenting member was of the opinion that the evidence failed to raise any issue of mistake, although he was uncertain as to whether the issue presented involved a mistake of law or of fact.

Thereafter, The Judge Advocate General of the Navy, by certificate filed under the provisions of Article 67(*b*)(2) of the Code, 50 USC § 654, asked this Court to review the following question:

"As a matter of law, was the issue of mistake of fact raised in this case?"

On February 6, 1953, the accused, who was then serving a sentence adjudged by a previous court-martial, was restored to duty from the Retraining Command, Mare Island, California. His bad-conduct discharge was suspended for one year and he was transferred to Camp Pendleton, California, where he was told by his commanding officer that if he "didn't walk the straight and narrow way," his punitive discharge would be executed. Within a short period of time accused had furnished a reason for further disciplinary proceedings, for on March 24, 1953, he absented himself without leave. He testified that he had invited further trouble in this manner because of marital problems and because he felt he was being unfairly treated within his unit.

On April 17, 1953, the accused was arrested by civilian police in Van Nuys, California, for petty theft. He was tried, convicted, and sentenced to a short period in jail. At that time he disclosed his status as a member of the Marine Corps to the civilian authorities, and

---

[1] NCM 55-03869.

the evidence is clear that his unit commander was informed of his whereabouts through official channels. He was due to be released from jail about May 23, 1953, and he ascertained informally from persons employed at his place of incarceration that the Navy Shore Patrol normally picked up the servicemen released from civilian jails. When the day of his release came the accused discovered that the military authorities had not filed a "hold" order on him, and believing that his suspended bad-conduct discharge had been executed, did not return to Camp Pendleton. Instead, he obtained civilian employment. As time went by, however, he began to wonder why a discharge had not been forwarded to him, for he knew that "when a man has not received his last discharge, there is something very wrong about it." At irregular intervals he asked the opinion of his civilian friends about his situation, but they invariably informed him the Marine Corps would eventually mail his discharge to him. In October 1954, during the course of a family argument, he informed his wife of his unauthorized absence from the Corps. She went so far as to call the Federal Bureau of Investigation, hoping they would come and get the accused, but was informed that he was no longer wanted by that service. The accused was eventually apprehended on April 6, 1955, by civil authorities and returned to military control.

It only remains to be mentioned that the accused was no novice in the ways of the Marine Corps, for his service in that armed force began in 1947, and he had received one honorable discharge and one general discharge prior to this incident. Nevertheless, he steadfastly maintained that he had never intended to desert, believing at all times that the military authorities had executed the punitive discharge and did not want him.

## II

Turning to the problem presented by the certificate, we must mention that the phrasing of the question leaves some doubt in our minds as to how it should be answered. When this case was tried, the specification alleged that the accused had committed the offense of desertion, and thus a specific intent to remain away permanently was involved. The instruction requested by defense was directed against that intent only. However, the board of review reduced the crime to absence without authority, that offense requires only a general intent, and a different principle is at stake. We can, of course, make certain that we answer the question by discussing all facets of the issue, and so we will proceed on that basis.

In United States v Rowan, 4 USCMA 430, 16 CMR 4, the accused was charged with larceny by check, and defended on the ground that he had made an honest mistake of fact. The issue presented was whether or not an instruction which required the mistake to be both honest and reasonable was erroneous. Because we were dealing with an offense which involved a specific intent to deprive an owner permanently of his property, we held that an instruction which required both conditions was erroneous.

The same rationale must be applied to the offense of desertion, for as previously stated, it requires a specific intent. Therefore, it follows that the defense of mistake of fact to desertion need only include a showing that it was honest, for the notion that an accused can negligently intend to remain away permanently represents as great a logical impossibility as does the theory that he may negligently intend to deprive permanently an owner of his property. United States v Rowan, supra. With the test laid down in that case as our measuring rod, we turn to the facts to ascertain whether an issue was raised.

We, like a majority of the board of review, conclude that a reasonable person could find that the accused honestly, even though negligently, believed he had been discharged from the service, and that an issue of mistake of fact was raised in so far as the offense of desertion is concerned. The accused had been returned to duty with a punitive discharge suspended during good behavior; he had been warned by one in authority

that he must adhere strictly to all rules and regulations, or the discharge would be executed; he had absented himself without leave for several weeks; and then he had been convicted of a civilian offense and sentenced to confinement. This, he knew, was a violation of the conditions of his probation and more than sufficient grounds to justify a vacation of the suspension. While the law so provides (Article 72 of the Code, 50 USC § 659), there was no contention made by the Government that the accused was aware that a hearing had to be held in connection with any suspension revocation. He had ascertained from the civilian jailers that the military authorities had been notified of his incarceration in the Van Nuys jail, and it was shown that this information was accurate. He had been told that if the Marine Corps wanted him they would pick him up when he was released from jail and there are bits of evidence which indicate that was the practice. At least, no one contends this was not the normal procedure. On the day of his release he learned that a "hold" had not been filed against him, and members of the Shore Patrol present at the jail took custody of another marine being released on that day, but departed without him.

Thereafter, the accused showed some concern over the fact that he had not received his discharge certificate, but testified he never wavered in his belief he had in fact been discharged. When he learned that the Federal Bureau of Investigation—which he knew normally handled apprehensions for the military services—did not want him, it merely reinforced that belief. Admittedly, he was negligent in not returning to Camp Pendleton upon his release from jail and in not contacting military authorities to ascertain his relationship with the service. Surely he could have learned the truth about his discharge if he had made inquiry at any one of several military installations in the area where he lived, and a reasonable man would have sought an official determination as to his status. But the accused's testimony was not inherently improbable, his mistaken belief was supported by some independent facts, and we can-

not say that, as a matter of law, it was not an honest belief. If we cannot do that, we must conclude that an issue was raised as to the offense of desertion, and that the law officer erred in failing to give the requested instruction.

We mentioned earlier that the board of review had affirmed a conviction for absence without leave; that ■■■■■■ ■ is the offense presently before us, and the certified issue can be viewed as posing an inquiry concerning that offense, which, as previously stated, involves only a general intent.

The principles of ignorance or mistake of fact have many ramifications, and we, therefore, have preferred to treat the cases which have reached us on an ad hoc basis. To date in our decisions, honest ignorance or mistake of fact has been held to constitute a defense in general intent cases only in instances involving the possession or use of habit-forming drugs or marihuana, and then the issue has been principally whether knowledge of the presence of the drug was reasonably raised. United States v Hughes, 5 USCMA 374, 17 CMR 374; United States v Reese, 5 USCMA 560, 18 CMR 184; United States v Greenwood, 6 USCMA 209, 19 CMR 335; United States v Grier, 6 USCMA 218, 19 CMR 344. In all other general intent cases we have held that the defense must be predicated on an honest and reasonable mistake.

In United States v Perruccio, 4 USCMA 28, 15 CMR 28, we were confronted with a case involving negligent homicide. In that instance a general intent offense only was involved. There we concluded that before a mistake could be a defense, it must be both honest and reasonable. One of the elements of that offense was negligence, and obviously the accused could not escape a finding of guilty by a showing he acted without due care.

A somewhat similar problem was presented to us in United States v McCluskey, 6 USCMA 545, 20 CMR 261. The accused in that case was convicted of bigamy and we held that, where that offense is in issue, accused's mistake of

fact must be both honest and reasonable to consitute a defense. Federal law is to the same effect. Alexander v United States, 136 F2d 783 (CA DC Cir) (1943).

Turning to the civilian decisions, it is clear they are far from adopting a general rule that honest mistake or ignorance of fact will serve as a defense to crimes involving only a general criminal intent. In Stone v United States, 113 F2d 70 (CA6th Cir) (1940), it was held:

"Where guilty knowledge is an element in the offense, as in conspiracy charges and the use of the mails to defraud, the knowledge must be found from the evidence beyond a reasonable doubt, but actual knowledge is not required; it may be inferred. Scienter may be inferred where the lack of knowledge consists of ignorance of facts which any ordinary person under similar circumstances should have known. Ignorance of inculpatory facts is no more a defense than ignorance of inculpatory law. There is evidence that each of the appellants knew, or could have known by the exercise of reasonable diligence, that the statements made to prospective purchasers concerning the value of the stocks of the respective corporations were false."

In De Forest v United States, 11 App DC 458 (1897), the defendant was convicted of keeping a bawdy house under a predecessor statute to Section 22–2722, supra. In construing the early enactment, the court said (page 463):

". . . It is enough that the acts done are contrary to law and subversive of the public morals, that the house is commonly resorted to for the commission of such acts, and that the proprietor knows, or should in reason know, the fact, and either procures it to be done, connives at it, or does not prevent it."

The court then proceeded to give its approval to the trial judge's charge to the jury, which included the statement that "every person is . . . presumed to have knowledge of that which goes on in his own house."

In Townsend v United States, 95 F2d 352, 358 (CA DC Cir) (1938), it was said, in connection with a charge of willful default after having been summoned as a witness by the authority of Congress, that, "Justification may also be based upon a mistake of fact by the defendant, where his mistake is a reasonable one and where the fact—if it were as he believed it to be—would have constituted justification."

From what has been said it must be manifest that thus far we have preferred to adopt the principle that to be a defense, in general intent cases, a mistake or ignorance of fact must be both honest and reasonable. When we apply that principle to these facts, we conclude the issue of mistake was not reasonably raised because, by the exercise of ordinary care, the accused would have known he had not been discharged. He had finished two tours of duty in the Marine Corps, and he was familiar with the fact that a certificate is issued to the individual concerned when he is discharged. He had lived for some two years near Marine Corps installations, and never once sought to ascertain, from anyone likely to know, whether or not he had been discharged from that service. The accused, had he acted reasonably, would have returned to Camp Pendleton when he was released from jail despite the absence of official transportation. Even were we to assume otherwise, an inquiry by mail to his unit commander would have elicited the necessary information. Giving to the accused every benefit of doubt, we are convinced his failure to take reasonable measures to ascertain his status was negligence of sufficient importance to render fatally defective any claim that his mistake was both honest and reasonable. We, therefore, conclude that mistake of fact was not raised as an issue as to the offense of absence without leave.

In its holding the board of review affirmed only a conviction for absence without leave for the period from March 24, 1953, to May 23, 1953, the date upon which the accused was released from the Van Nuys, California, jail. In order to reach that result the board

**217**

had to conclude that the accused had reasonably raised an issue of mistake of fact as to unauthorized absence. In this it erred, and this error requires corrective measures. In the light of the rule announced herein the accused is guilty of being absent without leave for the entire period during which he was out of the hands of military authorities.

The certified issue is answered in accordance with the principles set forth above. The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy for reference to the board of review for reconsideration of its action.

Chief Judge QUINN and Judge FERGUSON concur.