UNITED STATES, Appellee

v

GENE C. McCOWN, Lance Corporal,
U. S. Marine Corps, Appellant

20 USCMA 409, 43 CMR 249

No. 23,359

March 19, 1971

*Lieutenant Kenneth F. Ripple*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Colonel Charles J. Keever*, USMC, argued the cause for Appellee, United States. With him on the brief were *Commander Michael F. Fasanaro, Jr.*, JAGC, USN, *Captain John P. Proctor*, USMCR, and *Lieutenant James E. Akers*, JAGC, USNR.

## Opinion of the Court

QUINN, Chief Judge:

Two assignments of error are presented by the accused. The first, which deals with the sufficiency of the inquiry into his request for trial by military judge alone, was decided adversely to his contention in United States v Jenkins, 20 USCMA 112, 42 CMR 304 (1970). The second charges misapplication by the United States Navy Court of Military Review of "the legal standard of reasonableness" in evaluation of the accused's testimony but, in substance, the question is whether, conceding the truthfulness of the accused's testimony, the evidence is sufficient to support the findings of guilty of one of the offenses of which he was convicted.

The specification in issue alleges that the accused failed to go to a physical training formation at the time prescribed therefor, in violation of Article 86, Uniform Code of Military

Justice, 10 USC § 886. Confirming evidence submitted by the Government, the accused admitted he did not attend the formation at the required time. He attributed his failure to the fact that his watch had stopped. The whole of his direct testimony on the point is as follows:

"Q. . . . Directing your attention to the first specification of unauthorized absence, in that you were charged with failing to go to a P. T. formation. On the 27th of November 1969, did you attend the P. T. formation?
"A. No, sir.

"Q. Where did you go at that time?
"A. I went to the PX at three thirty.

"Q. At three thirty?
"A. Yes, sir.

"Q. Did you intend to make the formation?
"A. Yes, sir.

"Q. Did you have a reason for not going?
"A. Yes, sir. I looked at my watch and I didn't know it had stopped.

"Q. When did you look at your watch?
"A. It said fifteen minutes til.

"Q. Fifteen minutes until when?
"A. Til four, sir.

"Q. You thought you had sufficient time?
"A. Yes, sir.

"Q. When did you . . . how far is the PX from the formation area?
"A. It's about six to seven minutes walk.

"Q. So at 15 minutes to the hour, you had sufficient time to walk?
"A. Yes, sir.

"Q. And to make the formation?
"A. Yes, sir.

"Q. When did you notice that your watch had stopped?
"A. I hadn't noticed it until after I had gotten back and looked at it again, when I saw it running.

"Q. And what was the time on the watch at that time?
"A. It was 15 minutes to four."

Before the Court of Military Review, the accused contended that the Government had failed to prove the charge "beyond a reasonable doubt." He maintained that his uncontradicted testimony demonstrated he had "checked" his watch, and it indicated he "had plenty of time to walk to the formation"; since the watch had stopped at 3:45 p.m., without his knowledge, his absence from the formation was the result of an "honest and reasonable mistake" of fact, which is a complete defense to a charge of misconduct in violation of Article 86. See United States v Holder, 7 USCMA 213, 22 CMR 3 (1956). "[A]ccepting . . . [his] testimony," the Court of Military Review concluded that the "mistake" was not "reasonable under the circumstances" and, therefore, affirmed the findings of guilty.[1]

According to the accused, it took six to seven minutes to walk the distance between the place where the formation was to be held and the Post Exchange. Since he purportedly left the area of the formation for the PX at 3:30 p.m., he arrived at the PX about 3:36 or 3:37 p.m. When the accused next looked at his watch it registered 3:45 p.m. The accused did not describe his

---

[1] In mistake, the fact assumed to exist by the accused would demonstrate the legality of his conduct. Thus, in United States v Holder, 7 USCMA 213, 22 CMR 3 (1956), the accused believed that he had been properly discharged from the service; if he had actually been discharged, his absence from his unit was not unlawful. Here, the fact that the accused's watch stopped at 3:45 p.m., without his knowledge, would not itself demonstrate that his absence from the formation was authorized. However, the view we take of the evidence makes it unnecessary to consider this aspect of the case.

activities thereafter, but it could fairly be inferred that he remained at the PX. We are not informed as to how long he remained, but it is manifest from his testimony that he did not again check his watch to determine the time until after he returned to the area of the formation. Consequently, the fact that he did not know his watch had stopped at 3:45 p.m., is wholly immaterial to the reasonableness of his conduct in remaining at the PX. Considering the distance involved and the known time required to return from the PX to the formation area, in the exercise of its fact-finding power, the Court of Military Review could fairly determine that the accused's failure to make the formation did not result from a reasonable belief that he had "plenty of time" to make it.

The decision of the Court of Military Review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I disagree with my brothers' failure to find that the military judge erred in his inquiry regarding the accused's request for trial by military judge alone, for the reasons set forth in my separate opinion in United States v Jenkins, 20 USCMA 112, 42 CMR 304 (1970). Paragraph 53d(2)(b), Manual for Courts-Martial, United States 1969 (Revised edition), requires that the military judge "assure himself at the trial, before announcing that the court has assembled, that the request was understandingly made by the accused." His failure to do so, in my opinion, was prejudicially erroneous.

I also disagree with their holding with regard to the accused's conviction of Charge I. The specification of Charge I alleges that the accused failed "to go at the time prescribed to his appointed place of duty, to wit: physical training formation." His testimony, under oath, on this issue is set forth in full in the majority's opinion. Stripped to its essentials, the accused contended that he arrived late at the formation because his watch had

stopped. The Court of Military Review, while conceding that a mistake of fact is a defense to this charge (United States v Holder, 7 USCMA 213, 22 CMR 3 (1956)), *if the mistake is honest and reasonable*, did not believe, "accepting appellant's testimony, that his mistake was reasonable under the circumstances."

The *circumstances*, as reflected by the accused's unrebutted testimony under oath are: that he went to the Post Exchange (PX) at three-thirty; he intended to be present at the formation; while at the PX he looked at his watch and the time reflected was fifteen minutes till four; since the PX is about a six to seven minute walk from the place of the formation, he believed he had sufficient time to get there; when he arrived at the formation area he again looked at his watch and it still reflected fifteen minutes till four; he became aware then, for the first time, that his watch had stopped.

For some inexplicable reason, my brothers take the position that inasmuch as "it could fairly be inferred that he remained at the PX," after noting the time as 3:45 p.m., "the fact that he did not know his watch had stopped at 3:45 p.m., is wholly immaterial to the reasonableness of his conduct in remaining at the PX." For this reason, they hold that "the Court of Military Review could fairly determine that the accused's failure to make the formation did not result from a reasonable belief that he had 'plenty of time' to make it."

The accused did not describe his activities *after* he noted, while at the PX, that his watch indicated the time as fifteen minutes till four o'clock. He was not asked any questions about this phase of his testimony on cross-examination. Since there was testimony in the record that the accused had attended other formations in the same week, I do not perceive how "it could fairly be inferred that he remained at the PX," after noting the time as fifteen minutes till four. More likely, in my opinion, the watch had already been stopped for some time and the ac-

cused's efforts to attend the formation were thwarted by the faulty mechanism of a mechanical device. As defense counsel argued at trial:

"In regards to Specification 1, or the Specification under Charge I, failure to go to an appointed place of duty, the only defense is an honest one and reasonable. The testimony of Lance Corporal McCOWN, is such, that he was in walking distance to make it to the formation with plenty of time to spare. As testified earlier, he had been at . . . by the squad leader who conducted the run, he had been there at other formations in the same week. Men depend alot [sic] upon mechanical devices for support. Most notably, a wristwatch. Testimony is that in this particular instance, the watch had stopped. We put faith and trust in mechanical devices so that we can achieve our aims. Sometimes they fail with unfortunate consequences, and I submit that that is the result in the import of the defense [of-fense?] committed by Lance Corporal McCOWN."

In my opinion, the *reasonableness* of the accused's mistake is plainly evident. It is the rare person, indeed, who has not been late for an appointment or meeting of some sort, because of reliance on a timepiece which has failed to function properly. Since the Court of Military Review accepted the accused's testimony as honest, I believe that it erred in finding it not reasonable.

I would reverse the accused's conviction for failure to go to his appointed place of duty and dismiss Charge I and its specification. Since I believe that the military judge erred to the prejudice of the accused in his inquiry regarding the accused's request for trial by military judge alone (see my dissent in United States v Jenkins, supra), I would further reverse the decision of the Court of Military Review, affirming his conviction of the other offenses, and direct that a rehearing may be ordered.