UNITED STATES, Appellee,

v.

**Randy M. POOLE, Signalman Seaman,
U.S. Navy, Appellant.**

No. 63,158.
NMCM 880578.

U.S. Court of Military Appeals.

May 17, 1990.

For Appellant: *Lieutenant Mary Anne
Razim,* JAGC, USNR (argued); *Lieutenant Jeffrey S. Horwitz,* JAGC, USNR and
*Lieutenant Wade W. Parrish,* JAGC,
USNR.

For Appellee: *Lieutenant L. Lynn Jowers,* JAGC, USNR (argued); *Commander
Thomas W. Osborne,* JAGC, USN (on
brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Seaman Poole was tried by a military
judge sitting alone as a special court-martial on a charge of unauthorized absence
from May 17, 1984, until April 14, 1987, in
violation of Article 86, Uniform Code of
Military Justice, 10 USC § 886. He moved
to dismiss the charge on the ground that
the court-martial lacked personal jurisdiction over him. After this motion was denied, he pleaded guilty. The military judge
found him guilty pursuant to his pleas and
sentenced him to a bad-conduct discharge.
The convening authority approved the sentence; and the Court of Military Review
affirmed the findings and sentence in an
unpublished memorandum decision dated
July 31, 1989, Judge Albertson dissenting

in an eight-page opinion. Poole filed a petition for review with this Court, which we granted to consider the issue of personal jurisdiction.[1]

## I

On June 23, 1976, appellant enlisted in the Navy for a 4-year term. During 1979 and 1980 he was absent without leave for extensive periods of time; and for these absences he was tried and convicted by a court-martial in December 1980. The sentence adjudged by that court-martial included a bad-conduct discharge, which, however, was suspended for 12 months; and there is no evidence that this suspension was ever vacated.

Because of his unauthorized absences and the resulting court-martial conviction, Poole's enlistment was extended to April 15, 1983—some 33 months after the date when it would otherwise have expired. On April 15, 1983, Poole, who then was stationed on the USS IWO JIMA, asked if he was to be discharged that day; and he was referred to Ensign Frank, who was legal officer for the vessel. However, he received no discharge. According to appellant, he made further inquiries about being discharged, but still no discharge was provided him. The IWO JIMA was preparing for an imminent 8–month deployment; and Poole "told them that I wanted to go home, that I didn't want to go on that cruise. I did my time." Finally, on May 11, 1983, Poole absented himself without authority and remained absent for a year.

After a brief return to military control, appellant absented himself again on May 17, 1984, and was absent until April 14, 1987. This was the only absence for which he was being tried—apparently because the statute of limitations had run on the earlier absence which had commenced on May 11, 1983. Appellant claims that, because the Navy failed to discharge him in 1983 within a reasonable time after expiration of his

enlistment, he was no longer subject to court-martial jurisdiction. We disagree.

## II

### A

The military judge found that, between April 15, 1983, and May 17, 1983, the accused had made no request for discharge from active service in the Navy. However, whether—as Poole claims—such a request was made is immaterial. The significant fact is that neither on April 15, 1983, nor any time thereafter, did Poole receive any kind of discharge form or document. *Cf. United States v. Howard*, 20 MJ 353 (CMA 1985).

Article 2, UCMJ, 10 USC § 802, states:
(a) The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces, *including those awaiting discharge after expiration of their terms of enlistment;* volunteers from the time of their muster or acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.

(Emphasis added.)

■ Seaman Poole's term of enlistment expired on April 15, 198 3; and he was still awaiting discharge a few weeks later when he absented himself. If the statutory language is "given its plain and ordinary meaning," *see Murphy v. Garrett*, 29 MJ 469, 471 (CMA 1990), military jurisdiction continues until a servicemember's military status is terminated by discharge from his enlistment. The Code makes no express exception for the situation arising when an unreasonable delay has taken place in accomplishing the discharge; and we see no reason to imply such an exception. *See*

---

**1.** WHETHER THE COURT OF MILITARY REVIEW ERRED WHEN IT AFFIRMED THE DECISION OF THE MILITARY JUDGE THAT

PERSONAL JURISDICTION EXISTED OVER APPELLANT.

*United States v. Douse,* 12 MJ 473, 479–81 (CMA 1982) (Everett, C.J., concurring in the result).

Indeed, under some circumstances such an exception might create a jurisdictional gap. For example, a servicemember awaiting discharge after the end of an enlistment might commit a serious felony overseas for which he could not be tried by a state or federal court; and if court-martial jurisdiction were lacking, the crime might go unpunished. *See* Art. 3(a), UCMJ, 10 USC § 803(a).

Therefore, despite any prior intimation to the contrary, *see United States v. Fitzpatrick,* 14 MJ 394, 397 n. 2 (CMA 1983), we now hold that jurisdiction to court-martial a servicemember exists despite delay—even unreasonable delay—by the Government in discharging that person at the end of an enlistment and that no "constructive discharge" results when a servicemember is retained on duty beyond the end of an enlistment.

Nonetheless, a servicemember unreasonably retained on active duty is not without remedy:

He may submit a complaint under Article 138, UCMJ, 10 USC § 938. He may apply to the Board for the Correction of Military Records, *see* 10 USC § 1552. He may also seek extraordinary relief from the Court of Military Review or our Court. *See Robison v. Abbott,* 23 USC-MA 219, 49 CMR 8 (1974). Moreover, "the writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces." *Parisi v. Davidson,* 405 U.S. 34, 39, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). Furthermore, a servicemember's unreasonable retention in the Armed Forces after his enlistment has expired is a circumstance to be considered in determining whether he has been prejudiced by pretrial delays.

*Cf. Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972).

*United States v. Douse,* 12 MJ at 481 (footnotes omitted).

**B**

■ Although military jurisdiction over a servicemember is retained after the end of an enlistment, unreasonable delay in accomplishing his discharge or release from active duty may affect his obligation to perform some military duties. Thus, a servicemember unreasonably retained on duty might be subject to court-martial for rape, murder, or some other civil type offense but might have a defense to some military offenses.[2]

In April 1983, Seaman Poole learned that his ship was about to begin an 8–month deployment. If the judge had accepted Pocle's testimony that from April 15, 1983 —when his enlistment expired—he had been making repeated efforts to obtain his discharge,[3] appellant might challenge the lawfulness of a military order that he sail with his ship on a long voyage. Thus, if Poole had been charged with unauthorized absence because he was not aboard the USS IWO JIMA when it sailed in May 1983, a conviction might be improper.

■ Poole, however, was not prosecuted for this absence, but instead for a subsequent absence which commenced on May 17, 1984—a few days after his return to military custody from the absence that had begun a year before. Appellant still had not received his discharge; but he did not remain in military custody long enough to allow processing for separation. Instead, he left again and remained away for almost 3 years.

The record of trial gives no indication that, when Poole left on May 17, 1984, he was about to be sent away on a lengthy deployment, which would have delayed fur-

---

2. In another context, we have distinguished between military offenses and civil-type offenses. *See United States v. Marsh,* 15 MJ 252 (CMA 1983); *United States v. McDonagh,* 14 MJ 415 (CMA 1983).

3. The military judge in his findings apparently did not accept that testimony.

ther his pending discharge. Indeed, nothing in the record suggests any legal excuse for that absence. Therefore, we see no reason to question the providence of Poole's guilty pleas or to disturb the findings of guilty based thereon.

## III

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.