# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

### No. 201700040

_____

### UNITED STATES OF AMERICA
Appellee

v.

### AUSTIN T. GREENING
Operations Specialist Third Class (E-4), U.S. Navy
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Charles N. Purnell, JAGC, USN.
Convening Authority: Commander, Navy Region Mid-Atlantic,
Norfolk, VA.
Staff Judge Advocate's Recommendation: Lieutenant Commander
A.P. Sham, JAGC, USN; Addendum: Commander Irve C. LeMoyne,
JAGC, USN.
For Appellant: Lieutenant Jacob E. Meusch, JAGC, USN.
For Appellee: Captain Brian L. Farrell, USMC; Lieutenant Megan
P. Marinos, JAGC, USN.

_____

Decided 30 March 2018

_____

Before HUTCHISON, FULTON, and SAYEGH, _Appellate Military Judges_

_____

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

_____

HUTCHISON, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of involuntary manslaughter and obstruction of justice in violation of Articles 119 and 134, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. §§ 919 and 934 (2012).[1] The military judge sentenced the appellant to 42 months' confinement, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved only 39 months' confinement, reduction to pay grade E-1, and the dishonorable discharge and, except for the dishonorable discharge, ordered the sentence executed.

The appellant raises two assignments of error (AOEs). He alleges that at the end of his obligated service the government failed to take appropriate action to extend his enlistment within a reasonable time after he objected to his continued retention on active duty and thereby severed personal jurisdiction. He also alleges that the government violated his Fifth Amendment right to due process by holding him beyond his term of enlistment without notice for more than 300 days. After careful consideration of the record of trial and the parties' pleadings, we conclude the findings and sentence are correct in law and fact, and that no error materially prejudiced the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant's convictions stem from the death of his friend, Gunner's Mate Third Class (GM3) K.K. while the appellant and GM3 K.K. were socializing in the appellant's apartment. The appellant had several handguns in his apartment and GM3 K.K. was "loading and unloading various firearms" while the appellant played a video game.[2] At one point, GM3 K.K. attempted to hand the appellant a loaded .45 caliber pistol. The appellant explained:

> I asked him if the pistol was loaded. He said that it was. And I said, okay, and while keeping my eyes on the [television] screen and the [video game] controller in my left hand, I reached with my right hand to obtain the pistol from GM3 [K.K.]. The safety was not on, to my knowledge. . . . I noticed the hammer was cocked and so I attempted to make the weapon safe in the manner I knew how by depressing the trigger and releasing the hammer to the forward position. I did not successfully do this and that is why the pistol discharged.[3]

---

[1] The military judge acquitted the appellant of unpremeditated murder and murder while engaging in an act inherently dangerous to another, violations of Article 118, UCMJ, 10 U.S.C. § 918 (2012).

[2] Record at 174.

[3] *Id.* at 172.

A round struck GM3 K.K. under his left eye, killing him. The appellant called 911 and told the dispatcher that GM3 K.K. had shot himself.

## A. Civilian proceedings

On 7 August 2013, the Commonwealth of Virginia indicted the appellant for Second Degree Murder and Use of a Firearm in the Commission of a Felony.[4] On 20 March 2014, the appellant was convicted of both crimes. But on 8 July 2014, the Norfolk Circuit Court granted the appellant's motion for a new trial after discovering that the Commonwealth's medical examiner provided erroneous information to the court.[5] The appellant then entered into a plea agreement with the Commonwealth and pleaded guilty to involuntary manslaughter. On 17 July 2015, he was sentenced to three years' confinement, with two years and six months suspended. The appellant was released from civilian confinement on 9 September 2015 and the following day was placed into pretrial confinement, pending preferral of court-martial charges.[6]

## B. Military administrative actions

Throughout his civilian criminal proceedings, the appellant's command issued him multiple NAVPERS 1070/613 "Administrative Remarks" (Page 13) forms, with the subject line "Legal Hold," notifying him that he was being extended on active duty beyond his end of active obligated service (EAOS). The first Page 13 was issued on 30 August 2013 and notified the appellant that he was "*voluntarily* being held 120 days beyond his EAOS pending legal action."[7] The appellant signed the Page 13, acknowledging receipt. On 5 December 2013, the appellant acknowledged receipt of a second Page 13 "voluntarily" extending him on active duty for another 120 days.[8]

---

[4] VA. CODE ANN. §§ 18.2-32 and 18.2-53.1, respectively. *See* Appellate Exhibit (AE) IV at 16-17.

[5] AE IV at 29; AE VI at 19. The Commonwealth's medical examiner initially determined that GM3 K.K. suffered a subgaleal hemorrhage caused by blunt force trauma to his head, unrelated to the gunshot wound. The prosecution used this evidence to suggest that the appellant first struck GM3 K.K. and then shot him. Upon further forensic review, the subgaleal hemorrhage was determined to be caused by a previously undetected hairline fracture in the skull caused by the gunshot wound.

[6] Charges were preferred on 25 September 2015. Charge Sheet.

[7] AE IV at 18 (emphasis added). On 9 September 2013, the command re-issued the Page 13 to clarify that the appellant was being retained "with full pay." AE V at 43.

[8] *See* AE IV at 19; AE V at 44.

On 18 December 2013, the appellant's command notified him that he was being administratively separated and requested that the servicing Defense Service Office provide counsel to represent the appellant at his administrative separation board.[9] LT VM was assigned to represent the appellant and notified the appellant's command via letter, dated 28 February 2014, that the appellant "withdraws, repudiates, or revokes any voluntary enlistment extensions and demands release from active duty effective immediately."[10] Notwithstanding LT VM's demands, on 6 May 2014, the appellant's command once again notified him, via a third Page 13, that he was being "voluntarily" extended another 60 days on active duty.[11]

On 8 July 2014—the same day that the Norfolk Circuit Court granted the appellant's request for a new trial and ordered the appellant's release on bond—the appellant's command issued him a fourth Page 13, this time notifying the appellant that he was being "*involuntarily* extended beyond [his] normal scheduled EAOS, 9 September 2013, for a period of six months or until discharged."[12] Two days later, the appellant's command issued him a fifth Page 13, clarifying that the appellant was being "involuntarily extended six months beyond [his] previous extension" and that the action was "taken with a view towards trial by court-martial . . . ."[13] The appellant's command issued him substantially similar Page 13s every six months through completion of the court-martial.[14]

With the exception of those periods during which the appellant was in civilian confinement, he continued to receive pay and allowances even after

---

[9] Referring to the administrative separation notification, the trial counsel conceded that he was "not clear . . . why they [we]re doing that" and conceded that the command was without authority to administratively separate the appellant since he was beyond his EAOS. Record at 82. However, the appellant's executive officer submitted an affidavit stating, "[The appellant] was not to be discharged until *after* . . . any court-martial proceedings had taken place." AE IX.

[10] AE IV at 24. In another apparent attempt to hasten his departure from active duty, the appellant subsequently waived his right to an administrative separation board on 8 April 2014. *See Id.* at 26.

[11] *Id.* at 28; AE V at 45. This Page 13 notified the appellant that he was being retained on active duty "without pay." The appellant was in an unauthorized absence status while in civilian jail. *See* AE V at 50 (documenting the appellant's unauthorized absence status dating from 20 March 2014—the date appellant was convicted in Norfolk Circuit Court); *id.* at 54 (documenting the appellant's "lost time" while in civilian confinement).

[12] AE IV at 31 (emphasis added).

[13] AE IV at 32; AE V at 46.

[14] *See* AE V at 47-49.

the expiration of his enlistment. He requested and took leave and accepted travel orders. During the appellant's providence inquiry with the military judge, the appellant acknowledged that had not been issued a DD-214 discharge certificate. He further verified that he had not received a final accounting of all pay and allowances, and that no one had given him "permission or authorization to leave military custody or jurisdiction" or "told [him] in any respect that [he was] allowed to go home or [wasn't] subject to military control anymore."[15]

## II. DISCUSSION

### A. Personal jurisdiction

The appellant asserts that the court-martial lacked personal jurisdiction over him because the government failed to take timely and appropriate action to release him from active duty after he objected to his retention beyond his EAOS. We disagree.

We review questions of jurisdiction *de novo. United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012). "Members of a regular component of the armed forces, *including those awaiting discharge after expiration of their enlistment*" are subject to court-martial jurisdiction.[16] Generally, court-martial jurisdiction over an individual begins upon enlistment or induction into the armed forces and ends only when the individual is discharged. *See United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006) ("Court-martial jurisdiction over active duty personnel ordinarily ends on delivery of a discharge certificate or its equivalent to the person concerned issued pursuant to competent orders.") (citation and internal quotation marks omitted). Thus, military jurisdiction over the person continues as long as military status exists. *Solorio v. United States*, 483 U.S. 435, 439 (1987). For an active duty service member to be validly discharged—and thus for personal jurisdiction to terminate—three elements must be satisfied: 1) delivery of a valid discharge certificate; 2) a final accounting of pay; and 3) completion of the clearing process required under appropriate service regulations. *United States v. Hart*, 66 M.J. 273, 276 (C.A.A.F. 2008).

The appellant does not dispute that these three elements have not been satisfied. But, relying on *United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A. 1978), and on language in the Discussion of Rule for Courts-Martial (R.C.M.) 202(a),[17] he argues that the government lost personal jurisdiction over him

---

[15] Record at 165.

[16] Article 2, UCMJ, 10 U.S.C. § 802 (emphasis added).

[17] *See* RULE FOR COURT-MARTIAL 202(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), Discussion (2)(B)(i), "[C]ourt-martial jurisdiction normally continues past the time of scheduled separation until a discharge certificate . . . is

after he objected to his continued retention on active duty on 28 February 2014 and the government then "failed to take appropriate action in a reasonable time."[18]

In *Hutchins*, our superior court held that "[a] person subject to the [c]ode continues in service until the formalities of a discharge or release from active duty have been met or he objects to his continued retention and a reasonable time expires without appropriate action by the [g]overnment." *Id.* (citations omitted). The court concluded, however, that Hutchins had not objected to his continued retention, and that the government, therefore, maintained jurisdiction.

The appellant's reliance on *Hutchins* is misplaced. Five years after *Hutchins*, in *United States v. Fitzpatrick*, 14 M.J. 394 (C.M.A. 1983), Chief Judge Everett, writing for the court, reaffirmed the requirement for government action within a reasonable time after an appellant's objection to retention on active duty. The Chief Judge noted in a footnote, however, that in his view—a view not shared by a majority of the court— "court-martial jurisdiction over a servicemember continues until his military status is terminated by separation, even when there has been unwarranted delay in separating him and he has actively requested to be separated." *Id.* at 397 n.2 (citation omitted). The court then found that the government "proceeded within a reasonable time" by preferring charges 10 days after Fitzpatrick voiced his objection to continued retention past his service obligation. *Id.* at 398.

Chief Judge Everett's footnote in *Fitzpatrick* presaged a shift in the court's personal jurisdiction jurisprudence. In *United States v. Poole,* 30 M.J. 149, 150 (C.M.A. 1990), the court found no ambiguity in the "plain and ordinary meaning" of Article 2, UCMJ, and concluded that jurisdiction

---

delivered *or until the Government fails to act within a reasonable after the person objects to continued retention.*" (Emphasis added).

[18] Appellant's Brief of 2 Aug 2017 at 29. The appellant argues that the appropriate government action would have been to:

> 1. Place him on an *involuntary* legal hold with a view towards a successive prosecution in compliance with [Judge Advocate General Instruction 5800.7F, § 0124 (26 Jun 2012) (JAGMAN)].

> 2. Place him on an *involuntary* legal hold with [Navy Personnel Command] approval to wait and see the result of the state court proceedings.

*Id.* at 30 (emphasis in original). The appellant maintains that under either of these options the government could have secured personal jurisdiction since both complied with the Navy separation regulations.

continues until military status is terminated by discharge. "The code makes no express exception for the situation arising when an unreasonable delay has taken place in accomplishing the discharge; and we see no reason to imply such an exception." *Id.* (citation omitted). Specifically referring to *Fitzpatrick,* the court stated that "despite any prior intimation to the contrary . . . we now hold that jurisdiction to court-martial a servicemember exists despite delay—even unreasonable delay—by the [g]overnment in discharging that person at the end of an enlistment and that no 'constructive discharge' results when a servicemember is retained on duty beyond the end of an enlistment."[19] *Id.* at 151.

Therefore, even assuming the appellant was involuntarily extended beyond his enlistment and the government failed to "take appropriate action within a reasonable time" after he complained, he nonetheless remained on active duty and was not discharged. Under *Poole*, delay—even unreasonable delay—did not effectuate the appellant's constructive discharge. Here, the appellant did not receive a DD-214 discharge certificate, nor a final accounting of pay, and did not complete the clearing process required by service regulations. Accordingly, the court-martial retained jurisdiction over him.

**B. Due process**

The appellant next asserts that the government's failure to notify him that he was being retained on active duty against his will violated his Fifth Amendment right to due process. The appellant contends that "[a]t a minimum, due process required the [g]overnment to *notify* [him] that it was holding him on active duty *involuntarily*."[20] This notice, the appellant argues, would have afforded him the opportunity to object to his continued retention on active duty and would have "trigger[ed] a requirement for the [g]overnment to take 'appropriate action' in a 'reasonable time.'"[21] Specifically, the appellant maintains that the government deprived him of this requisite notice from the expiration of his enlistment until he was notified—some 300 days later—that he was being retained on active duty "involuntarily." The appropriate remedy for this due process violation, according to the appellant, is to place him "in the status he would have been in absent the [g]overnment's violation of his due process rights: a civilian"

---

[19] The court points out, however, that "a servicemember unreasonably retained on active duty is not without remedy[,]" *Poole*, 30 M.J. at 151, and may submit a complaint under Article 138, UCMJ, apply to the Board for the Correction of Naval Records, or seek a writ of habeas corpus. The appellant, here, sought no such relief.

[20] Appellant's Brief at 21 (emphasis in original).

[21] *Id.* at 18 (citation and internal quotes omitted).

and to then set aside and dismiss the charges for lack of personal jurisdiction.[22] Again, we disagree.

The appellant's argument is based upon a faulty premise. As we noted above in resolving the first AOE, even if the appellant had received notice that he was being retained on active duty *involuntarily* from the outset, and assuming he objected to his continued retention, he still would not have been discharged and personal jurisdiction would have continued. *See Poole*, 30 M.J. at 151. Moreover, the appellant cites no authority for the proposition that failing to properly notify a service member that he or she is being retained on active duty against their will amounts to a deprivation of constitutional due process that severs jurisdiction. The appellant contends that his command failed to follow Military Personnel Manual (MILPERSMAN) Section 1160-050, which directs that "[w]hen a member is retained in service beyond expiration of enlistment . . . entry as to reason and authority for retention shall be made on the appropriate page of the member's service record and signed." But the appellant fails to point to any authority—and we have found none—that supports the contention that the MILPERSMAN, or any similar administrative regulation, establishes procedural rights of a constitutional dimension enforceable by an accused at a court-martial. *See United States v. Kohut,* 44 M.J. 245, 250 (violations of binding regulatory procedures may only be asserted by an accused if the regulation was prescribed to protect an accused's rights).

More fundamentally, here the appellant *was* notified that he was being retained on active duty past the expiration of his enlistment. Regardless of whether the Page 13s indicated the appellant's retention on active duty was voluntary or involuntary, no one was in a better position than the appellant to know whether he was being held on active duty against his will.[23] Likewise, the appellant did in fact object to his retention on active duty, via LT VM's letter. As a result, the appellant's argument that he was not on notice and therefore could not object to his continued retention on active duty is without merit—he was on notice and he did object.

---

[22] *Id.* at 22.

[23] Notably, LT VM's letter seeking the appellant's release from active duty—which was witnessed and countersigned by the appellant—concedes that the appellant "voluntarily extended." *See* AE IV at 24, ¶¶ 2-3.

## III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

Judge FULTON and Judge SAYEGH concur.

For the Court

R.H. TROIDL
Clerk of Court

