*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
CRISFIELD, HOLIFIELD, and LAWRENCE
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Austin R. CHAMBLEE**
Master-at-Arms Third Class (E-4), U.S. Navy
Appellant

**No. 201900279**

Decided: 24 November 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Aaron C. Rugh (arraignment)
Jonathan T. Stephens (motions, trial)

Sentence adjudged 19 June 2019 by a general court-martial convened at Naval Base San Diego, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E--1, confinement for 24 months, and a dishonorable discharge.

For Appellant:
*Major Brian L. Farrell, USMCR*

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Major Kerry E. Friedewald, USMC*
*Lieutenant Catherine M. Crochetiere, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of one specification of simple assault, five specifications of assault consummated by a battery, and four specifications of aggravated assault, in violation of Article 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 928.[1]

Appellant asserts one assignment of error: the Government failed to maintain personal jurisdiction over Appellant when his term of enlistment expired. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's convictions involve numerous incidents of physical abuse of his wife and, later, his girlfriend, occurring between November 2014 and February 2016 while he was assigned to USS Carl Vinson (CVN 70). The following dates and events are relevant to the question of jurisdiction: Appellant began his active service on 3 December 2013, with an initial end of active obligated service [EAOS] date of 2 December 2017. On 26 September 2017, Carl Vinson's command judge advocate [CJA] sent an internal memo to the command's administrative officer [AO] saying Appellant was being extended beyond his EAOS due to an ongoing criminal investigation and that Appellant was not to be discharged without permission from the commanding officer or CJA. This six-month extension was reflected in the Navy Standard Integrated Personnel System as part of Appellant's electronic service record, with an effective date of 3 December 2017 and a new EAOS of 3 June 2018. Due to a poor interface between pay and personnel systems, Appellant's pay stopped and his Common Access Card [CAC] expired at his original EAOS of 2 December 2107. Both issues were quickly remedied by his command.

---

[1] Additional specifications of simple assault and assault consummated by a battery and charges and specifications alleging sexual assault, rape, attempted rape, and attempted killing of an unborn child were withdrawn and dismissed pursuant to a pretrial agreement.

On 29 May 2018, the CJA sent another memo to the AO, saying that Appellant was being extended for another six months. Appellant signed an Administrative Remarks form (NAVPERS 1070/613) [Page 13] on 30 May 2018, acknowledging this second extension. (No Page 13 had been issued for the first extension.) This six-month extension was reflected in Appellant's electronic service record as being effective 31 May 2018. On 19 November 2018, the CJA sent a third memo to the AO, saying Appellant was being extended for an additional six months, until 2 June 2019. Appellant acknowledged this extension by signing a Page 13 sometime between 21 and 31 December 2018. Appellant signed his final extension-related Page 13 on 16 May 2019, acknowledging that he was being extended through 2 December 2019.

Appellant first asserted the lack of personal jurisdiction at his 17 December 2018 pretrial hearing, when he also informed the Government that his pay had again stopped. The Government acted immediately to restart his pay, correcting the issue in two days. Again, this pay stoppage was attributable to poor communication between pay and personnel systems, rather than to any intent of the Government to discharge Appellant.

While awaiting trial, Appellant, through counsel, requested to be assigned on temporary orders to Naval Air Station North Island, California. As Carl Vinson was then making a homeport shift from North Island to the State of Washington, the command agreed to issue the orders to facilitate Appellant's access to his San Diego-based defense counsel. When these orders expired on 14 February 2019, no new orders were issued. Appellant continued to comply with the orders of his temporary command, but, receiving no clarification of his duties or status, he simply took it upon himself to spend several weeks at his home.

On 15 April 2019, Appellant and his defense counsel signed a pretrial agreement in which Appellant acknowledged that he was on active duty.[2] Appellant also specifically agreed to remain on active duty past his then-2 June 2019 EAOS to allow the convening authority to process him for administrative discharge.[3]

---

[2] *See* App. Ex. IX.

[3] The convening authority ultimately did not elect to process Appellant for administrative discharge.

Initial charges were preferred on 22 March 2018, with additional charges preferred on 22 August 2018. These charges, referred to a general court-martial on 30 August 2018, were withdrawn and dismissed on 13 November 2018. The present charges were preferred on 29 November 2018 and referred on 20 March 2019. Appellant was sentenced on 19 June 2019.

At no time was Appellant issued a Department of Defense Form 214, Certificate of Release or Discharge from Active Duty (August 1999) [DD Form 214]. Appellant never received a final accounting of pay nor commenced, let alone completed, any part of the separation clearing process.

Additional facts necessary to resolve the assignment of error are addressed below.

## II. DISCUSSION

We review questions of personal jurisdiction de novo, "accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported by the record." *United States v. Christensen*, 78 M.J. 1, 4 (C.A.A.F. 2018) (internal quotation marks omitted). "Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment," are subject to court-martial jurisdiction. UCMJ art. 2. And "military jurisdiction continues until a servicemember's military status is terminated by discharge from his enlistment." *United States v. Poole*, 30 M.J. 149, 150 (C.M.A. 1990). "It is black letter law that *in personam* jurisdiction over a military person is lost upon his discharge from the service, absent some saving circumstance or statutory authorization." *Christensen*, 78 M.J. at 4. Generally, the three elements enumerated in 10 U.S.C § 1168(a) and § 1169—delivery of a final discharge certificate, a final accounting of pay, and completion of the clearing process required under Service regulations—are necessary to effect a valid discharge. *Id.* (citing *United States v. King*, 27 M.J. 327, 329 (C.A.A.F. 2018)). However, the Court of Appeals for the Armed Forces [CAAF] has specifically held that section 1168 provides only guidance, and "its demands are not binding when they go against reason or policy." *United States v. Nettles*, 74 M.J. 289, 291 (C.A.A.F. 2015). The CAAF's reasoning regarding section 1168 should also apply to section 1169.

The present facts differ from those in *Christensen* and *Nettles*, in that both of those cases involved circumstances in which the government was attempting to exercise jurisdiction despite one or more of the section 1168 and section 1169 factors having been met. In the case before us, none of the three factors was met. While Appellant, citing *Nettles*, invites us to ignore this fact and proceed directly to a "reason or policy" analysis, we pause to

note that the absence of *any* of the section 1168 factors weighs heavily against a finding that the Appellant was discharged. Our superior court has held that these factors are not binding—not that they are not relevant. Accordingly, we will consider the absence of these factors in the totality of the circumstances when determining if continued jurisdiction goes against reason or policy.

## A. Policy

Appellant first claims that Navy policy supports a finding that he was effectively discharged at his original EAOS date, citing to Part 1160-050 of the Naval Military Personnel Manual (Ch-19, 12 Apr 2007) [MILPERSMAN], which addresses, *inter alia*, involuntary extension of enlisted personnel beyond expiration of enlistment. Paragraph 1 of this Part reads,

> 1. *Policy*. Under certain conditions, members may legally be retained beyond the date of expiration of enlistment or other period of obligated service (OBLISERV), either voluntarily or involuntarily until discharged, released to inactive duty, or transferred to the Navy Reserve and released to inactive duty. When a member is retained in service beyond expiration of enlistment, or other period of OBLISERV, an entry as to reason and authority for retention must be made on the appropriate page of the member's service record and signed per this manual.

MILPERSMAN, Part 1160-050, at 1.

Appellant would have us read this last sentence to mean that, since a signed entry in a member's service record (accomplished via a Page 13) is required when a member is retained beyond the member's EAOS, the failure to make such an entry proves the member was not properly retained. We disagree.

First, a plain reading of the MILPERSMAN language—"*[w]hen a member is retained* in service beyond expiration of enlistment . . . an entry as to reason and authority for retention must be made" (emphasis added)—indicates retention is a condition precedent for the service record entry, not the reverse. While the lack of a Page 13 may be of some evidence that a retention did not occur, the cited policy language does not say that retention cannot occur without a Page 13 entry. Unlike the policies addressed in *Christensen*, 78 M.J. at 5 (Army Regulation declaring when a discharge becomes effective), and *Nettles*, 74 M.J. at 292 (statute imposing strict timeline for discharge of certain officers who fail to select for promotion), MILPERSMAN Part 1160-050 creates only a documentation requirement; it does not delineate how or when a discharge (or retention) takes effect.

Accordingly, we do not find a policy-based reason for questioning the effectiveness of the Government's actions to retain Appellant involuntarily on active duty due to criminal proceedings. However, the fact that the Government did not notify Appellant of the initial involuntary retention may be of value in appraising whether a finding of jurisdiction is reasonable. We now turn, then, to the second prong of Appellant's argument.

**B. Reason**

"The overarching interest implicated by the law of personal jurisdiction, and especially discharge jurisprudence, is the need—of both servicemember and service—to know with certainty and finality what the person's military status is and when that status changes." *Nettles*, 74 M.J. at 291. In the present case, there is no evidence indicating Government intent to discharge Appellant. The CJA first directed the AO to place Appellant on legal hold more than two months before Appellant's original EAOS. (The military judge found that the CJA's memo was "reflective . . . of the command's intent."[4]) The CJA consistently repeated this direction before each subsequent adjusted EAOS; every extension beyond the first was documented by a Page 13 signed by Appellant before the then-current extension expired. Significantly, the Government neither prepared nor delivered to Appellant a DD Form 214 or a final accounting of pay, nor did it direct Appellant to begin the separation clearing process.

There was no objectively reasonable basis for Appellant to believe he was discharged. While there were numerous examples of poor administrative oversight (pay stoppages, CAC deactivation, expiration of temporary orders with no follow-on direction, periods with no muster requirement), these were outweighed by other events and facts demonstrating to Appellant that he was still on active duty. Other than the short, quickly remedied periods during which his pay stopped, he continued to receive pay and allowances throughout the entire time between his initial EAOS and trial. At no time was Appellant told he was out of the Navy. (The closest statement to this end was a confession of ignorance by personnel within Carl Vinson's Administrative Department when Appellant first asked about his status following his initial EAOS. He received a definitive answer within days.) And Appellant was on notice (via a signed Page 13) that he was on legal hold for a period fully encompassing the muster-less time after his temporary orders expired.

---

[4] R. at 82.

Finally, Appellant's actions belie any assertion that he was uncertain of his status. On the occasions when his pay stopped and his CAC no longer worked, he did not walk away as a discharged civilian; rather, he notified his command so that they could correct the matter to accord with his active duty status. He acknowledged his legal hold status by signing several Page 13s collectively covering the period from 30 May 2018 to 2 December 2019. Even when his temporary orders expired and he was not required to muster for several weeks, he still continued to follow the orders of his temporary command.

The facts of this case do not indicate that Appellant was ever discharged, and reason does not dictate a different conclusion. Accordingly, considering the totality of the circumstances—including the absence of all three section 1168 and section 1169 factors—we find neither reason nor policy supports a severance of jurisdiction.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. UCMJ arts. 59, 66.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

7